IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RALPH E. PINSON, | ) |
| Plaintiff, | ) **PUBLISH** |
| | ) |
| v. | ) CIVIL ACTION 24-0278-WS-C |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter is before the Court on the parties' cross-motions for summary judgment. (Docs. 24, 25). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 23-25, 27-30), and the motions are ripe for resolution. After careful consideration, the Court concludes that the plaintiff's motion is due to be denied and the defendant's motion granted.

**BACKGROUND**

According to the complaint, (Doc. 1), the plaintiff was a criminal defendant before this Court. He was sentenced to a term of 21 months, with judgment entered on September 19, 2003. The judgment imposed a restitution obligation exceeding $1 million. The plaintiff completed his prison term and was released from custody on July 27, 2006. In November 2022, the defendant filed a notice of lien in Walton County, Florida. In January 2023, the defendant filed two additional notices of lien in the same jurisdiction.

The complaint acknowledges that the plaintiff's liability to pay restitution will not terminate until July 2026, twenty years after his release from prison. However, the complaint alleges that, under the statute governing liens supporting an order of restitution, the lien expired in September 2023, twenty years after entry of judgment. The

complaint's single count seeks a declaration that the lien has expired and is unenforceable, along with a direction to the defendant to take immediate action to remove the notices of lien.

## DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties agree that no genuine issue of material fact is presented and that this case is due to be resolved by motion for summary judgment based on the resolution of a purely legal question. (Doc. 24 at 3; Doc. 25 at 2).

An order of restitution may be enforced in various ways, including "in the manner provided for in ... subchapter B of chapter 229 of this title ...." 18 U.S.C. § 3664(m)(1)(A)(i). Included within subchapter B are the following provisions:

> (b) Termination of liability. -- The liability to pay a fine shall terminate the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person fined, or upon the death of the individual fined. The liability to pay restitution shall terminate on the date that is the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person ordered to pay restitution. In the event of the death of the person ordered to pay restitution, the individual's estate will be held responsible for any unpaid balance of the restitution amount, and the lien provided in subsection (c) of this section shall continue until the estate receives a written release of that liability.
>
> (c) Lien. -- A fine imposed pursuant to the provisions of subchapter C of chapter 227 of this title, an assessment imposed pursuant to section 2259A of this title, or an order of restitution made pursuant to sections 2248, 2259, 2264, 2327, 3663, 3663A, or 3664 of this title, is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986. The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b).

18 U.S.C. § 3613(b), (c). The question presented is whether the lien expired twenty years after the Court entered judgment (September 19, 2023), or whether it will expire twenty years after the plaintiff was released from prison (July 27, 2026). The plaintiff, relying

2

on what he terms the "plain meaning" of subsection (c), takes the former position; the defendant, relying on two appellate cases, takes the latter.

When "the plain language [of a statute] is unambiguous, our inquiry begins with the statutory text, and ends there as well." *National Association of Manufacturers v. Department of Defense*, 583 U.S. 109, 127 (2018) (internal quotes omitted). The plaintiff insists that application of this rule compels judgment in his favor. (Doc. 25 at 8, 11). The Court cannot agree. Whether viewing individual words, lengthier phrases, or the entire quoted passage, the statutory text either unambiguously supports the defendant's position or, at worst, reasonably supports each party's reading. In the latter scenario, the statute is ambiguous, and in that case the history of Section 3613, the purpose of its 1996 revision, and the legislative history accompanying that revision conspire to resolve the ambiguity decisively in favor of the defendant.

The plaintiff's textual argument seizes on the first thirteen words of the final sentence of subsection (c): "The lien arises on the entry of judgment and continues for 20 years ...." This language explicitly states that the lien continues for twenty years, but it does not explicitly require that the twenty-year period begin to run only upon entry of judgment; instead, such a conclusion must be drawn by inference (from the identification of when the lien arises) rather than by textual or logical necessity. The plaintiff's argument goes downhill from there.

"Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (internal quotes omitted). "[W]e presumptively give those [undefined] terms their ordinary meaning." *Environmental Protection Agency v. Calumet Shreveport Refining, L.L.C.*, 605 U.S. ___, 145 S. Ct. 1735, 1747 (2025). To ascertain that ordinary meaning, the Supreme Court routinely resorts to dictionary definitions, including those contained in Black's Law Dictionary ("Black's"). *E.g.*, *Groff v. DeJoy*, 600 U.S. 447, 468-69 (2023). Indeed, it has relied on Black's to construe the term "lien" as it appears in the Foreign Sovereign Immunities Act. *Permanent Mission of India v. City of New York*, 551 U.S. 193, 198 (2007).

3

Black's defines "lien" as follows: "A legal right or interest that a creditor has in another's property, *lasting usu. until a debt or duty that it secures is satisfied*." Black's (12th ed. 2024) (emphasis added). The plaintiff himself insists that this definition applies to Section 3613. (Doc. 25 at 8-9). The Court therefore begins with a presumption that Congress, by establishing a "lien" to secure the restitution obligation, denoted that the lien survives as long as the liability to pay. The plaintiff believes the presumption can be overcome by the statutory text, but the Court disagrees.

The plaintiff would prefer that the Court confine its analysis to the thirteen words quoted above. The Court may not do so. "[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *United States v. Miller*, 604 U.S. ___, 145 S. Ct. 839, 853 (2025) (internal quotes omitted). "Basic principles of statutory interpretation require that we construe [statutory provisions] in harmony, not set them at cross-purposes." *Jones v. Hendrix*, 599 U.S. 465, 478 (2023). Subsection (c) declares that the "order of restitution" referenced in subsection (b) is a lien in favor of the United States, while subsection (b) expressly references "the lien provided in subsection (c)." Moreover, subsection (c) cuts off the lien when "the liability ... is terminated under subsection (b)." All this language overtly ties the two subsections together, requiring that they be construed together and harmoniously. When that is done, it is clear that the life of the lien is coterminous with the life of the liability.

As subsection (c) recognizes, a restitution obligation may be satisfied, remitted, or set aside. If it is not, subsection (b) identifies three ending dates of the obligation: (1) twenty years after the entry of judgment; (2) twenty years after the defendant's release from prison; and (3) upon his estate's receipt of a written release. Because subsection (b) requires that the later of the first two options be utilized, as a practical matter the first option can apply only in the event of a non-custodial sentence. Thus, except in the uncommon case of a non-custodial sentence or a deceased defendant, "[t]he liability to pay restitution shall terminate ... 20 years after the release from imprisonment of the person ordered to pay restitution."

4

The final portion of subsection (c)'s last sentence provides that the lien "continues ... until the liability ... is terminated under subsection (b)." Subsection (c) therefore specifically contemplates survival of the lien until the underlying obligation expires under subsection (b) -- usually, as in this case, twenty years after release from custody.

Congress's description of the lien reinforces this reading. Congress did not say that an order of restitution "creates" or "gives rise to" a lien, which verbiage might suggest a related but separate existence, as a mother and child; instead, Congress specified that an order of restitution "is" a lien. As an intransitive verb, "be" carries in this context the sense of identity, or equivalence in meaning. Merriam-Webster's Online Dictionary (last accessed July 22, 2025). Congress's choice of "is" therefore indicates an intended identity between liability and lien, extending to their duration.

Reading subsections (b) and (c) together, and informed by the ordinary meaning of "lien" and "is," the Court concludes that the lien for restitution imposed on an incarcerated defendant does not terminate twenty years after entry of judgment but twenty years after release from imprisonment. The "20 years" of subsection (c) refers to the twin twenty-year periods set forth in subsection (b), without designating which applies in a particular case.[1]

The plaintiff stresses the interpretive canon that "Congress acts intentionally when it omits language included elsewhere," especially when the provisions being compared lie "in close proximity." *Department of Homeland Security v. MacLean*, 574 U.S. 383, 392 (2015). The plaintiff asserts that this canon applies because Congress "specifically defined a termination date" for liability in subsection (b) but "did not incorporate the same language in defining the duration and termination of a lien securing that liability in

---

[1] Even were the Court to (improperly) confine its inquiry to the thirteen words favored by the plaintiff, the result would not change. As noted, "lien" as used in that snippet must be presumed to connote a right or interest continuing as long as the underlying obligation. Because the excerpt does not explicitly mandate running the twenty-year period from the entry of judgment, it does not overtly conflict with this definition of "lien," so the excerpt is best harmonized as not restricting the lien's life to twenty years from entry of judgment when the underlying liability extends longer.

subsection (c)."  (Doc. 25 at 13-14).  As noted, however, subsection (c) explicitly pegs the termination of the lien to when "the liability ... is terminated under subsection (b)," which is a precise and express incorporation of the termination events for liability as the termination events for the lien.

The plaintiff argues that, had Congress intended the life of the lien to correspond to the life of the liability, it had no reason to create two subsections and to address expiration separately in each.  (Doc. 25 at 14).  There are, however, obvious reasons for the separation.  Section 3613 addresses "civil remedies for satisfaction of an unpaid fine," with Section 3613(f) clarifying that "all provisions of this section are available to the United States for the enforcement of an order of restitution" as well.  Subsection (b) addresses how long liability (that is, *exposure* to enforcement) lasts.  Subsection (c) performs the separate task of establishing a *tool* for enforcement.  It was perfectly logical for Congress not to create a lien in the same subsection addressing the length of liability, and equally logical not to separate the provision addressing the duration of the lien from the provision establishing the lien in the first place.  While Congress presumably could have structured Section 3613 otherwise, its chosen organization does nothing to advance the plaintiff's position.

The plaintiff notes that the final sentence of subsection (c) connects the various means of ending the lien with the disjunctive "or," and he argues that the earliest alternative to occur necessarily controls termination of the lien.  Otherwise, he says, the lien would continue to exist even if a defendant, say, satisfied his restitution obligation (the second alternative) within days of sentencing.  (Doc. 25 at 8).  The defendant's assertion is reasonable enough, but it would help him only if the first alternative -- "continues for 20 years" -- must run from entry of judgment.  As discussed above, that proposition is rejected.

Finally, the plaintiff objects that the Court's reading reduces "for 20 years or" to surplusage.  (Doc. 25 at 12-13, 15).  Assuming that this is so, "[t]he canon against surplusage is not an absolute rule ...."  *Marx v. General Revenue Corp.*, 568 U.S. 371, 385 (2013).  "While it is generally assumed that statutes do not contain surplusage,

instances of surplusage are not unknown." *Arlington Central School District Board of Education v. Murphy*, 548 U.S. 291, 299 n.1 (2006). Indeed, "redundancies are common in statutory drafting -- sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication." *Barton v. Barr*, 590 U.S. 222, 239 (2020). It is thus possible to "overstat[e] the significance of statutory surplusage or redundancy. Redundancy is not a silver bullet. .... Sometimes the better overall reading of the statute contains some redundancy." *Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019).[2] For reasons stated above, the better reading of Section 3613 is that the lien for restitution imposed against a custodial defendant terminates twenty years after release from imprisonment, regardless of any surplusage that reading entails.

The Court's reading is not merely the better reading, it is the only reading that avoids ambiguity. "Where there are two ways to read the text -- either ["for 20 years or"] is surplusage, in which case the text is plain; or ["for 20 years or"] is nonsurplusage ..., in which case the text is ambiguous -- applying the rule against surplusage is, absent other indications, inappropriate." *Lamie v. United States Trustee*, 540 U.S. 526, 536 (2004).

The plaintiff's effort to assign independent value to "for 20 years or" would, if accepted, introduce ambiguity because, even if it supported a reasonable reading that the lien expires as to custodial defendants no later than 20 years after entry of judgment, the balance of subsections (b) and (c) addressed above, as well as the presumption that Congress used "lien" in the ordinary sense of a right or interest continuing as long as the obligation is unsatisfied, would still support a reasonable contrary reading. Under *Lamie*, such ambiguity counsels against applying the rule against surplusage.

In any event, were the Court to accept the plaintiff's invitation and assign independent value to "for 20 years or," the interpretive tools made available to resolve the resulting textual ambiguity drive additional nails into the coffin of the plaintiff's position.

---

[2] "Surplusage is redundant statutory language ...." *Chickasaw Nation v. United States*, 534 U.S. 84, 97 (2001) (O'Connor, J., dissenting).

In 1982, Congress passed the Victim and Witness Protection Act of 1982 ("VWPA"), codified at 18 U.S.C. § 3663. This law took a relatively relaxed view of restitution, making such an order discretionary with the sentencing judge. In 1984, Congress repealed Chapter 229 and replaced it with a new chapter. Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, § 212(a), 98 Stat. 1837, 2005 (1984). Its version of Section 3613 provided that "[a] lien becomes unenforceable and liability to pay a fine expires -- (1) twenty years after the entry of the judgment; or (2) upon the death of the individual fined." *Id*.

By 1996, Congress's stance as to restitution had hardened, resulting in the Mandatory Victims Restitution Act of 1996 ("MVRA"), codified at 18 U.S.C. § 3663A. The MVRA made restitution mandatory for certain crimes, while retaining the discretionary VWPA. The MVRA also amended Section 3613, including by introducing the first sentence of subsection (b) as it now reads and all of subsection (c) as it now reads (save for a single clause unrelated to the instant issue)[3] as well as by adding subsection (f), discussed above.

What became the MVRA originated in the House as H.R. 665. In its report on that bill, the Senate Judiciary Committee described the purposes of H.R. 665 as "requiring Federal criminal defendants to pay full restitution," establishing procedures for issuing restitution orders, and "consolidating the procedures for the collection of unpaid restitution with existing procedures for the collection of unpaid fines, while at the same time strengthening these procedures." S. Rep. 104-179, § 202, at 12 (1995). "This legislation is needed to ensure that [crime victims] receive the restitution that they are due." *Id*.

H.R. 665 did not include the changes to Section 3613(b) and (c) made by the MVRA, as well as other provisions desired by the Judiciary Committee. The Committee

---

[3] A 2016 amendment added the final two sentences of subsection (b). Justice for All Reauthorization Act of 2016, Pub. L. No. 114-324, § 2(b), 130 Stat. 1948, 1948 (2016). A 2018 amendment added the phrase, "an assessment imposed pursuant to section 2259A of this title," to subsection (c). Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. 115-299, § 7(a), 132 Stat. 4383, 4388 (2018).

thus reported an amendment in the nature of a substitute, S. 735. S. Rep. 104-179, at 1. The amendments to Section 3613 were included in Section 106 of S. 735, "changes intended by the committee to strengthen the ability of the Government to collect fines and restitution." *Id*. at 22; *accord id*. at 13.

A conference committee met to reconcile the conflicting bills of the House and Senate. What became the MVRA was folded into Title II of a more sprawling piece of legislation known as AEDPA, without change to the Judiciary Committee's language regarding Section 3613(b) and (c). H.R. Rep. 104-518, § 207(c)(3), at 26-27 (1996) (Conf. Rep.). The bill was approved by both chambers and signed into law.

This body of evidence demands of the plaintiff an explanation: why would Congress, in a bill intended to ensure that criminal defendants pay full restitution, and including provisions intended to strengthen the procedures for ensuring such payment, eliminate statutory language limiting both liability and lien to twenty years post-judgment, replace it with language extending liability to twenty years post-release, and then essentially nullify the utility of the change by re-inserting (through different, uncertain language) the same restrictive twenty-year post-judgment limitation on liens? The plaintiff offers no explanation for such an improbable scenario, and none is easily imaginable.

The coup de grâce is delivered by the Judiciary Committee's description of the proposed amendments to Section 3613:

> Section 106. -- Procedure. Establishes procedures for the collection of restitution orders, and consolidates these procedures with existing procedures for the collection of federal criminal fines. Strengthens the collection provisions for restitution and fines. In major part, this section:
> ...
> provides that a restitution order constitutes a lien on the defendant's property in favor of the victim (or in favor of the United States in certain circumstances), *extends the period of a lien pursuant to a fine or restitution to 20 years after the defendant's release from incarceration*, removes the provision which extinguishes the obligation to pay a fine after 20 years, and adds provisions relating to jointly held property to provisions governing liens for the enforcement of fines and restitution ....

S. Rep. 104-79 at 15-16 (emphasis added).  The bicameral conference report, in turn, when addressing Title II, states that "[t]he managers intend that the Report of the Senate Committee on the Judiciary to accompany H.R. 665 (S.Rept. 104-179) should serve as the legislative history for this subtitle."  H.R. Rep. 104-518 at 111-12.

The Court is well aware of the Supreme Court's complicated relationship with legislative history as an interpretive tool, but the Eleventh Circuit continues to recognize that "congressional intent (and legislative history) still have a legitimate place in the interpretive enterprise."  *Drazen v. Pinto*, 106 F.4th 1302, 1345 (11th Cir. 2024) (internal quotes omitted).  Even the most skeptical jurist would be hard pressed to ignore the agreement of sixteen Senators responsible for shaping the legislation[4] -- almost one-third of a full Senate majority -- that the version of Section 3613 enacted by Congress extends the life of a restitution lien to twenty years post-incarceration.

The Court notes that several Courts of Appeal have identified the duration of a restitution lien as twenty years following release from prison.  *United States v. Joseph*, 102 F.4th 686, 689-90 (5th Cir. 2024); *United States v. Norwood*, 49 F.3d 189, 197 (3rd Cir. 2022); *United States v. Pickett*, 505 Fed. Appx. 838, 841 (11th Cir. 2013).  The defendant's brief rests almost entirely on *Joseph* and *Pickett*.[5]

The plaintiff correctly observes that *Pickett* is not binding, both because it is unpublished and because it is dicta.  Nor did *Pickett* provide any analysis or explanation for why it so construed Section 3613.  Ordinarily, such silence would render an unpublished opinion unpersuasive,[6] but the Court finds *Pickett* instructive because it suggests the panel viewed the duration of the restitution lien to be so obvious as not to

---

[4] S. Rep. 104-79, at 25.

[5] The defendant cites a host of other appellate cases, but none of them mention the duration of the restitution lien as opposed to the restitution obligation.

[6] "Unpublished decisions are not binding authority and they are persuasive only to the extent that a subsequent panel finds the rationale expressed in that opinion to be persuasive after an independent consideration of the legal issue."  *Collado v. J. & G. Transport, Inc.*, 820 F.3d 1256, 1259 n.3 (11th Cir. 2016) (internal quotes omitted).

require explanation.  The same can be said of *Norwood*.  Only *Joseph* represents a holding, and only *Joseph* offered textual analysis in support of its assessment.  The Court's analysis differs from that of the Fifth Circuit but, to the extent that *Joseph*'s discussion supports the Court's conclusion herein, it stands as further validation of that conclusion.

## CONCLUSION

For the reasons set forth above, the Court concludes that the restitution lien in this case, absent earlier satisfaction or other elimination of the restitution obligation, endures until July 27, 2026.  Accordingly, the plaintiff's motion for summary judgment is **denied** and the defendant's motion for summary judgment is **granted**.  This action is **dismissed with prejudice**.  Judgment shall be entered accordingly by separate order.

DONE and ORDERED this 22nd day of July, 2025.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE
